Good morning. My name is Rex Sears-Workman-Neidiger, appearing for Appellant and Cross FLE Finisar Corporation. I am joined by my partner, Sterling Brennan. Upon court's leave, I will reserve three minutes of my time for rebuttal. May it please the Court. In the underlying litigation, Finisar prevailed on its claim for declaratory judgment that it had not defaulted under the trust indentures at issue. Based on its status as the prevailing party, Finisar sought and obtained an award of attorney fees under California's reciprocity statute. U.S. Bank sought and obtained an award of fees based on a contractual provision. Each party challenges the other's award and also argues that its own award should have been larger. Unless the Court desires otherwise, I will begin with the basis for Finisar's award and then turn to the other issues as time permits. As the District Court held, Finisar is entitled to prevailing party fees under California Civil Code Section 1717A because if U.S. Bank had prevailed, then under the indentures, Finisar would have had to pay U.S. Bank's fees. Absent questions from the Court, I will not belabor this analysis, but will turn to the underlying choice of law. Just a quick question there. Yes. Where in the indentures is it provided that there will be an attorney fee awarded to enforce the contract? I think the party cited Section 706. There are two provisions of the contract. It's 706 and 603 in combination. Section 603 authorizes the trustee to bring suit to enforce the indentures, and 706 says that Finisar is liable for fees that the trustee incurs in accordance with any of the provisions of the indentures. So if the trustee brings suit under Section 6.03 to enforce any provision of the indentures, then by operation of Section 7.06, Finisar is liable for those fees. So it's in 7.06 that there's the language that would support the application of 1717. Taken in conjunction with Section 6.03. Thank you. In connection with that, the California courts have explained, for example, in the Santez v. Gooden case, that the application of Section 1717 is pretty straightforward. If the other party would have been entitled to fees, then the prevailing party is entitled. But that sounds like the usual contract provision where it says, now here's the agreement of the parties, and if there's litigation, then there's going to be an award of attorney's fees to the prevailing party. That's not the kind of agreement we have here. Is it, in other words, this agreement doesn't seem to contemplate suits of Finisar versus its trustee? With respect to Section 6.03, it does contemplate a suit by the trustee to enforce the indentures in Section 6.03. And that would be against Finisar or third parties? And most likely against Finisar because Finisar and U.S. Bank are the only parties to the indenture. And so if the trustee is bringing a suit to enforce the indenture, presumably that suit would be against Finisar. As a practical matter, is there any place in the record where the entirety of the indenture, any of the indenture agreements actually appears? Yes. In the supplemental excerpts of record, there is, I don't recall if it's the entire text of the indentures. However, the sections that I just referenced, Section 6.03 appears at page 44 of the supplemental excerpts of record, and Section 7.06 appears at pages 47 and 48. That we have. Thank you. Moving on then to the choice of law. The indentures include a provision selecting New York law. The district court, applying Restatement Section 187, held that California law controlled reciprocity because, first, applying New York law would be contrary to the fundamental policy of California. Second, California has a materially greater interest than New York in applying its law. And three, California law would have been selected under the rule of Section 188. That's the phrase used by the restatement. Excuse me. So California law would have been selected under the rule of Section 188. U.S. Bank concedes the first point, that applying New York law would be contrary to the fundamental policy of California, but challenges the others. The district court concluded that California had a two-fold interest, as the forum and Finisar's domicile, that was materially greater than New York's. U.S. Bank criticizes the district court for focusing its material analysis,  According to U.S. Bank, particularly as explained in its reply brief, Section 187 requires New York law to be applied unless, on balance, the five contacts listed in Section 188 favor California to a materially greater degree than New York. Essentially, U.S. Bank proposes that the distinct material interest in Section 188 inquiries that are prescribed by Section 187 be collapsed into a single step. Now, in addition to the state cases that we've cited, the district court's methodology and its conclusion are squarely supported by this court's decision in Flores v. American Seafoods, as well as by Comment G to Restatement Section 187, which says that the forum will apply its own principles to weigh material interests, not Section 188. Returning to Flores, in that case, this court declined to apply Washington's reciprocity statute to a maritime employment contract that included a provision selecting federal admiralty law. Rather than running through the five Section 188 contacts, which U.S. Bank says would be the right methodology, this court instead weighed Washington's interest, arising from the fact that the seamen were hired in Washington, against both the federal regulatory power over maritime employment contracts and, quote, the time-honored maxim that seamen are emphatically the words of the admiralty. So, too, here, the district court properly focused on California's interest, first, as the forum, in regulating cost awards and access to courts sitting in California, which parallels the federal regulatory power over maritime employment contracts, and, second, California's interest as Venezuela's domicile, which parallels the federal interest in its wards. Where a California resident brings suit in California on a contract it made in California, California's interest in enforcing its statute is materially greater than any interest New York might have in permitting non-resident parties to non-forum litigation on a contract not made in New York to contract around California's statute. This is the only result consistent with all of the cases that have been cited to this court. Counsel, was there any, aside from the choice of law provision, was there a forum selection clause in the contract? No, there was not. One question that U.S. Bank has raised is how could U.S. Bank avoid the application of California's reciprocity statute if U.S. Bank wants New York law to govern through and through? What more could U.S. Bank have done? Well, one thing it could have done is it could have put a forum selection clause in selecting New York. Another thing it could have done is it could have had closing in New York. I have to say that the whole thing strikes me as just a little bizarre that you think you've accounted for what law is going to govern your contract by having a choice of law provision in there, which can simply be overridden based on the fortuity of who files suit first and where. And that just strikes me as just a little odd. It's not just based on who files suit where. What the district court properly focused on is the fact that not just that the case was in California, but also that Finisar is a California domiciliary, and importantly, U.S. Bank is not a New York domiciliary, and the fact that the contract was made in California. There is also an important consideration that arises from the fact that what Finisar claims fees under is a statute, not a contract. California's reciprocity statute appears in Division III of the Civil Code, which has four parts. The reciprocity statute appears in Part III, titled Obligations Imposed by Law, not Part II, titled Contracts. And as California Supreme Court has explained in the PLCM v. Drexler case, 997 Pacific 2nd at 515, attorney fees under Section 1717 are, quote, allowed by statute rather than by contract. And so the question here is not so much one of contractual interpretation or enforcement. The question is, under the circumstances presented, can the parties, does the presence of the contractual choice of New York law bar enforcement of California's statute? Hard to think, though, that if this suit had been filed someplace other than California, that this whole Byzantine choice of law dance would have turned out the same. I expect that's correct. And there are things that could have been done to avoid that result that U.S. Bank did not do. But the fact is, it was filed in California, and therefore, because it was filed in California, California does have a great interest in seeing its statute enforced. You filed it in California. I'm sorry? Your client filed it in California, isn't it? Yes. Your client filed it in the State Court of California. Correct. And Finisar actually moved to remand the case. Correct. So Finisar was actually arguing there really isn't a substantial federal question here to start with. Correct. Does Finisar still maintain that position? That decision was made by the district court, and it's not being challenged on appeal. Oh, I read that in the brief, but I'm still asking. If Finisar takes that position, you say it's not challenged, but the court has an obligation to confirm its own jurisdiction, don't you agree? Yes, certainly the court does. We took what we thought was an appropriate position in view of the law and the issues in the case. I can't offer anything beyond the fact that we did argue for remand, and that motion was denied. The three cases that the parties came across once this case was in the course of litigation all appeared to be diversity cases, though, didn't they? Yes. So far as I'm aware, there is not a case that has, apart from ours, that has addressed the federal subject matter jurisdiction issue.  Thank you. All right. So would the result have been different if the case had been brought in another state? Very likely, but the fact remains that it was brought in this state, and in litigation commenced in this state. California does have a material interest that is not matched by any interest that New York has. Barring further questions relating to choice of law, I'll move on to the next topic. The next topic I will address briefly is the amount of U.S. banks' fees. In connection with this, the district court applied a discount of roughly 15 percent to the fees that were requested by U.S. Bank. I would, apart from what we've already indicated in our briefs, simply direct the Court's attention to the Giroux case that we did cite in our briefs, 308F3rd at 726, where the Seventh Circuit, at some length, explains how a reasonable position, which is required for fees to have been incurred reasonably, is the sort of cost-justified argument that would be advanced by a solvent litigant who knew in advance that he would have to pay the tab, but thought the return discounted by the risk of loss greater than the outlay. We think under that standard, the district court clearly acted well within its discretion in reducing U.S. Bank's award. I will reserve the balance of my time for rebuttal. Thank you. May it please the Court, the issues in this appeal come down to a single question. Should FINISAR be held to the unambiguous contractual promises it made to U.S. Bank? As relevant here, it made two promises. First, it promised that it would pay U.S. Bank for all of its reasonable expenses incurred doing its job as trustee, unless U.S. Bank acted in bad faith. The second promise it made is that U.S. Bank would have absolutely no exposure to FINISAR, including for attorneys' fees, unless U.S. Bank, again, acted in bad faith, and it chose New York law under which everyone agrees those two things are enforceable. The reason FINISAR made those two promises is that it had to in order to get U.S. Bank to act as a trustee here, because FINISAR issued $275 million worth of notes, and it had to hire a trustee under the Trust Indenture Act, which it incorporated, and to access the national debt markets. And the annual administrative fee for a trustee in this situation is $6,000 for the first two of these and $7,500 for the third. Better start charging more, huh? You better get a bulletproof guarantee that you're going to get reimbursed if something happens, if a default comes up. That's the price of admission to the national debt market. Or not deal with California corporations. Or not deal with California corporations or persuade your honors that this choice of law is enforceable. And I'm going to start there, because I agree that that's the issue I think you probably want to talk about. Our position is that their agreement to choose New York law is enforceable. This case falls within the broad range of cases under federal common law in which the parties to a commercial transaction that has multiple state contacts get to choose which state law is going to apply, and the court will enforce their choice no matter which state they choose. And the reason I'm saying that is because in this case, everything that the parties actually had a choice of where to put, they chose to put it in New York. There are many contacts that they already had coming into the transaction from other states, and we don't deny that. We deny that there are a variety of contacts to Delaware and California and other places. But everything they got to choose, they put in New York. Let me start with the fact that FINISAR, as part of these deals, agreed to establish and maintain an office in New York just for these notes. That's section 4.05 of the indentures, and it's in our supplemental excerpts of record at pages 40 and 41. It established an office there for these notes. U.S. Bank also had an office in New York for the purpose of administering this notes. That's at supplemental excerpt of the record 49. The Depository Trust Company, which is the trust company that administers all the payments on all of these notes because that's where the national debt markets are located, that's in New York too. That's supplemental excerpts of the record, page 21. All of the payments of principal and interest that FINISAR made on this and all of the notices that U.S. Bank made were made to New York. That's on page supplemental excerpt of the record 21. FINISAR disputed that in its reply brief, saying that section 4.01 said payments of principal will be made to the trustee, and it argued that since U.S. Bank Trust National Association is headquartered in Delaware, that they are made to Delaware, that's factually unsupported. There's nothing in the record. In fact, what that section 4.01 says is that the payments will be made as the trustee directed and U.S. Bank directed that they paid in New York. I could keep going. The times for all of these are set up in New York. FINISAR hired a New York counsel. But the point is is that the core of this transaction, the things that the parties pick, they pick to be in New York. And that's enough to make their choice enforceable because the question isn't whether California has some contacts. It's not whether it has the same contacts. It has to have materially greater interest in enforcing this, and it does not. The Flores case in which this court addressed an attorney's fees issue with the choice of law, it enforced the party's choice of federal law in that case over Washington state law, notwithstanding the fact that the suit had been brought in Washington and that some of the individual plaintiffs, and these were individuals, not a sophisticated corporation, lived in Washington and were hired in Washington, which means their contracts were formed there, and that's where their boat shipped from. So all the contacts that FINISAR says always trump didn't trump in Flores. And they don't trump here. Because if FINISAR were correct, in a billion-dollar company like FINISAR, entering transactions for $275 million worth of notes, can't make a binding agreement to enforce New York law, then nobody can in California. And I thank you, Your Honor. That's what you may have been referring to. The other problem, this, is that FINISAR is right. You can't have a national debt market controlled by a common set of laws because parties can't choose to have New York law govern. That's what you need. Is there anything in the Trusts and Ventures Act that would preempt the application of California law here? No. We haven't made a preemption argument, Your Honor, and I'm not aware that there is any that's available to us. I mean, this does sound like this is a problem for anybody operating out of California. If we are to uphold the district court's opinion here, you may have good reason for wanting to avoid California corporations. And either California would have to take account of that, or Congress would have to preempt 1717. Yeah, there's no doubt about that. I think that there are three possible options for avoiding this problem. Number one is just to enforce a choice of law. I think that's the clearest and the easiest. Number two is for Congress to address it specifically, which it could. Number three is our alternative argument. If California law applies under Section 1717, we don't think that this is the kind of fees agreement or expensive reimbursement that triggers 1717. And we say that for two reasons. 1717 applies to prevailing party fee awards. So if the contract says that one party gets fees if it fights to enforce a contract and wins, then California is going to make that reciprocal. But it does not apply that to indemnity agreements, which are intentionally one way and justifiably one way. Would you help me for a minute? The choice of law, New York law, was applied for what purposes here? Well, the parties agree that New York law governs everything except for this. So the court applied New York law with respect to everything except for this. Yeah, the court applied New York law to the issue of U.S. banks' fees and compensation. It applied it to the terms of it. The only thing that we have a fight about is Finisar's fees. And that's actually another reason. We've cited cases that hold that although the restatement endorses the principle that different laws can apply to different issues, it doesn't go so far as to say that different laws can apply to related issues, because that would undermine the party's expectations. And the policies of the choice of law here, that's the prism through which we measure the context and who has a materially greater interest. The policy of expectations of the parties gets triple counted in contract cases because there are six policies that the restatement considers. One of them is the expectations of the party. The second is the policies of the underlying body of law, which here is contract, which gets the expectations again. And the third one is predictability and the way the system, the national system relates. And counsel for Finisar admitted to Your Honors that if this were brought anywhere else, California law would not apply. He's right on that, which goes to the point of the unilateral. Well, but that's true. But the, you know, we apply the party's choice of law to all the substantive issues in the case, but the procedural issues are supposed to be, can look to the jurisdiction. And I'm just, why, it's not as if the law of New York has been displaced for all purposes. The district court felt that this was more on the procedural side. And I'm just wondering why is that wrong here? Yeah, that's a good question, Your Honor. And I have two responses, a technical one and a substantive one. The technical one is both Finisar and U.S. Bank agree that attorney's fees is a substantive issue in this case. That's explicit in both of our briefs. And that's why it's controlled by a state body of law rather than a procedural thing. And it's substantive because? We agree that it's substantive because it doesn't have to do with, you know, the rules of civil procedure in this court. It actually has to do with the liabilities and remedies of the parties. And so we both agree that. That's not in dispute. The reason in this case, Your Honor, I think that makes sense, is that this isn't an ordinary contract where you're contracting to buy and sell computers and then you're trying to enforce that and so the fees are unrelated. The fees here are directly related to the substance of the contract. U.S. Bank's job is to take actions on behalf of the note holders to protect their interests against Finisar. That's its job. And as part of its job, you know, Finisar gave it this bulletproof guarantee it would get paid for that job. And so this isn't a prevailing party fee agreement. This is a doing your job fee agreement. U.S. Bank, Your Honor, gets paid win, lose, or draw as long as it acts in good faith. Now, was that argument, was that argument, okay, was that made to the district court? Absolutely. And the district court's response to that, as you understand it, was what? The district court's response to that, as I understand it, was to say that because there is a provision that allows U.S. Bank to get its fees, that trumps everything else. It trumps the fact that there's an indemnity provision and an intentional one way. It trumps the fact that U.S. Bank gets paid win, lose, or draw. We just think that the, and I can understand how the district court would reach that, given some of the language in the cases. They haven't addressed the situation. None of the cases cited by Finisar or U.S. Bank involve a trustee where you've got this unique situation of a service provider stuck in the middle of these two parties with giant interests with a $6,000 contract, and it's hired by one to represent the interests of the other. This is an unusual situation in the law. There's a reason for it because of the way the markets are structured and the trust indenture, but it hasn't come up before. But here, more than any other case I've seen in California, the fees are tied to the substance. They're tied to U.S. Bank doing their job. That's why you shouldn't split out California and apply it only to that. You should do New York for all of these reasons. I'd like to address, well, first let me ask your honors if you have other questions, either on the choice of law issue or the 1717 issue. If not, then let me briefly address the issue of U.S. Bank getting paid for its fees. The counsel for Finisar didn't address the underlying requirement, and I think the district court got that right. U.S. Bank gets paid all of its reasonable fees as long as it doesn't act in bad faith or negligently, and its job of issuing notices of default and defending them clearly falls within its scope of duties. The only issue is whether it performed those duties in good faith and without negligence here. And it did because of the sequence of events. In September of 2006, the New York state courts interpreted identical language and held that it required that there is a duty of the issuing company to provide reports, even if it missed its SEC filings. That's what the New York court held. That happened in September of 2006. That was the first case, right? That was the first case. Three months later, in December of 2006, Finisar failed to make its reports because it didn't file with the SEC. So three months later, after this brand-new decision there, it's the only decision on point this happened. U.S. Bank did what it had to do, exercising its prudent judgment as trustee and do the notices of default. Now, what it didn't do, it didn't take the aggressive actions of accelerating the debt. It didn't take the actions of suing to collect, which were further. All it did was the minimum it had to do to preserve the trustee's interest. And then Finisar jumped the gun by bringing a default judgment suit in California to pick its form, frankly. It then, instead of deciding it on a matter of laws, were arguing to your honors, Finisar served a whole bunch of discovery that escalated the costs in here and that U.S. Bank tried to avoid by saying, let's just decide this on the papers because this is an issue, you can do it. So U.S. Bank's fees were incurred in doing exactly what it was hired to do. They were incurred in good faith. The fact that district court decisions came out elsewhere in the country don't make it bad faith for U.S. Bank to have continued. I actually think they are more useful to us because they show what other reasonable trustees were doing. Everybody who had this issue come up after Bearing Point had to go and do this as a trustee and they had to litigate it to a decision. In the other two cases they cite, those trustees appealed to the courts of appeals to get the binding decision. We could have done that and still have been in bad faith here or in good faith here. We decided not to. So I think those cases show exactly the opposite of what Finisar says. They show that this was the good faith prudent thing for a trustee to do. Your Honor, I'm not going to address either the amount of Finisar's fees or U.S. Bank's fees unless you want me to. I think that you probably have enough briefing on that. Do you have any other questions for me? Yes, I just wanted to go back to those three cases that seem to be set in diversity as the basis for jurisdiction in the federal courts. And U.S. Bank persuaded this district judge that there was a substantial federal question here as opposed to a mere contract question between nondiverse parties. Are you aware of any other cases that have come down that relate to that? I'm not aware of cases that have arisen in this situation. I'm aware of two things that I think are relevant to your honors. Number one is just the test for this. It's the test in Grable and Sons from the United States Supreme Court. The citation is 545 U.S. 308. It's a 2005 case. And the test is does a state law claim necessarily raise a question of federal law that's substantial and disputed and that if the federal courts decided it, it would not affect the allocation of responsibilities between state and federal courts. That's the test. We argue that that was met here because in order for FINISAR to get a declaration that it had complied, it necessarily had to prove that the Trust Indenture Act did not require it to submit these reports because Section 4.02 of the indenture specifically says that FINISAR has to comply with Section 314 of the Trust Indenture Act. 314 is 15 U.S.C. 77 NNN, the bizarre numbering scheme. So in order to prove that it had complied, FINISAR had to prove that that federal statute didn't require it to file these reports. That was the basis of this. It was a substantial question here. We disputed it because we said, no, it does require you to file those reports. And so that was the federal question that had to be litigated here. Now, although no court has addressed that particular issue, the Third Circuit has held, in fact, that there is an implied right of action under the Trust Indenture Act. That's the Zafiro case. And the analyses aren't the same. We aren't arguing that there's an implied right of action there. But the same analyses apply in terms of is there a national intent to make this a national policy? Should it be uniformed federally rather than subject to the individual states? So that's the analysis. I think it's the correct one, but that's the basis for federal jurisdiction. Thank you. You've more than used your time. Thank you. Thank you. We helped you. Thank you, Your Honors. Starting first with the contention that the other cases show that U.S. Bank was acting reasonably, the comment by the District of Minnesota in United Healthy Wilmington is a good diagnosis of what these were about. The court there characterized the defendant's effort to accelerate the notes as not caused by a lack of information but by its desire to realize a windfall. The driver in these various other cases is that the note holders wanted to shake down the issue of workforce and money. That was the driver here. And in terms of U.S. Bank not indemnifying, excuse me, not accelerating, that sheds important light on this case as well. Reading from section, excuse me, page 16 of the further excerpts of record, this is U.S. Bank's counsel addressing the district court. U.S. Bank's counsel reported to the district court. U.S. Bank did ask for indemnification from the holders when, excuse me, U.S. Bank did ask for indemnification when holders wanted the trustee to accelerate. There is a provision in the indentures for the trustee to shield itself from liability, and that is by seeking and obtaining indemnity from the note holders. The question here is not whether trustees need to be on the hook. The question is when the trustees are going out on a whim to try to get some extra money for the note holders, should they look to the issuer to cover its fees or to the note holder to cover its fees? They should look to the note holders because the note holders are the ones who stand to benefit. Otherwise, as the Giroux case recognized, you end up with a severe moral hazard problem. That's what we have and have had here. So with respect to U.S. Bank's motives in acting reasonably, no, it didn't want to go out further on a whim without indemnification from the holders. It could have asked for indemnification from the holders in our circumstance, but it chose not to. Now, with respect to the promises that FINIS-R should be held to, we've already addressed the notion that there should be no exposure, that U.S. Bank should have no exposure. U.S. Bank would have had no exposure if it had done what the trustees in the other cases did, which is obtain indemnity from their note holders. And in terms of its reasonable expenses, U.S. Bank is limited to recovering fees incurred in accordance with any of the provisions of the indenture. They have to point to a provision of the indenture. It's not enough to say that we're reasonable. Thank you. Thank you. The matter just argued is submitted for decision.
judges: Stotler, Schroeder, Bybee